IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARCHIBONG EDEM-EFFIONG, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-2025 |
| | § | |
| HIPOLITO M. ACOSTA, | § | |
| Defendant. | § | |

# MEMORANDUM AND ORDER

The plaintiff, Archibong Edem-Effiong, filed this action against Hipolito M. Acosta in his official capacity as District Director of the United States Citizenship and Immigration Service ("USCIS").[1] Edem-Effiong, who seeks a declaratory judgment regarding an adverse decision from USCIS on his application for naturalization as a United States citizen, has filed a motion for summary judgment [Doc. #13]. The District Director has filed a cross-motion for summary judgment, arguing that Edem-Effiong is not entitled to prevail [Doc. #18]. Edem-Effiong has filed a response [Doc. #24]. After considering all of the pleadings, the summary judgment evidence, and the applicable law, the Court grants the defendant's motion, denies the motion filed by the plaintiff, and dismisses this case for reasons that follow.

## I.  FACTUAL BACKGROUND

The facts in this case are not disputed. At issue is whether the plaintiff, Edem-Effiong, made false or misleading statements that precluded him from establishing the

---

[1] Acosta is no longer the District Director of the USCIS in Houston. Because he is sued in his official capacity, the Court will refer to the defendant simply as the "District Director."

requisite showing of "good moral character," thereby disqualifying him as a matter of law from obtaining United States citizenship through naturalization.

Edem-Effiong, a native and citizen of Nigeria, entered the United States as a temporary visitor on December 30, 1993, along with his wife, Rosaline, and their four children, each of whom are also Nigerian. After settling in Harris County, Texas, the couple divorced. Although the divorce became final on October 2, 1994, the family remained in Texas. Less than three months later, Edem-Effiong married Debbie Parker, a Houston resident and United States citizen, on January 18, 1995.[2] Shortly thereafter, on May 1, 1995, Edem-Effiong applied for an immigrant visa (Form I-130) and filed an application to adjust his status (Form I-485) from that of a non-immigrant visitor to an immigrant seeking permanent resident status as the spouse of a United States citizen. Both applications were granted on June 3, 1996, paving the way for Edem-Effiong to become a lawful permanent resident ("LPR") eligible to stay in the United States and to apply for citizenship through naturalization.

Because Edem-Effiong applied for LPR status through his marriage to a United States citizen, his status was subject to certain conditions imposed by the Immigration Marriage Fraud Act of 1986 (the "IMFA"), 8 U.S.C. § 1186a. Under the IMFA, an alien who marries a United States citizen must first complete a term of "conditional permanent resident status"

---

[2] Documents in the administrative record refer to Ms. Parker as Dobbi Sharone Parker, but she signs her name as "Debbie." For clarity, the Court will defer to the name found on her federal income tax return forms and will refer to her either as Edem-Effiong's second wife or as Debbie.

for two years before he or she is eligible to become an LPR. Shortly before the two-year term expires, the married couple must file a joint petition (Form I-751) to remove the conditions imposed upon the alien's status and they must also appear for a personal interview. *See* 8 U.S.C. § 1186a(c)(1). The purpose of these conditions is to test the bona fides of the "qualifying marriage" to determine whether it was entered into for the improper purpose of procuring an alien's unlawful admission as an immigrant (*i.e.*, a sham marriage entered into for the purpose of perpetrating immigration fraud). *See* 8 U.S.C. § 1186a(b) & (c). If a favorable determination is made upon a review of the joint petition and the personal interview, the conditions are removed and the alien attains LPR status. *See* 8 U.S.C. § 1186a(c)(3)(B). If the determination is not favorable, however, the alien's permanent resident status will be terminated, making the alien subject to removal from the United States. *See* 8 U.S.C. § 1186a(c)(3)(C).

On June 4, 1998, shortly before the two-year conditional period was about to expire, Edem-Effiong and his second wife, Debbie, filed the requisite joint petition (Form I-751) to remove the conditions imposed on Edem-Effiong's status. The Form I-751 asked Edem-Effiong to list "all" of his children, and he responded by listing the four children from his marriage to his first wife, Rosaline. Edem-Effiong failed to disclose, however, that he had fathered another child out of wedlock as the result of a "marital indiscretion" with his former spouse. In that regard, while he was married to Debbie, Edem-Effiong and Rosaline had a fifth child on August 28, 1996. The child was born during the term of Edem-Effiong's conditional residence.

Based on the incomplete information provided in the Form I-751, which failed to disclose that he had an out-of-wedlock child during the period of conditional residence, Edem-Effiong's effort to remove the conditions on his status was successful and the joint petition was approved on February 13, 2002. On October 11, 2002, Edem-Effiong filed for a divorce from his second wife, Debbie. On November 4, 2002, Edem-Effiong filed an application to become a naturalized United States citizen (Form N-400). On this form, Edem-Effiong disclosed that he had a fifth child. Noting the disparity between the number of children listed on the Form I-751 and the Form N-400, an immigration inspector asked Edem-Effiong a standard question during his citizenship interview about whether he had ever given false testimony or provided false information in order to obtain an immigration benefit. Edem-Effiong replied under oath that he had not.

On August 20, 2003, Edem-Effiong's application for naturalization was denied based on a finding that he failed to meet the statutory criteria for citizenship because he lacked the requisite "good moral character." In particular, the immigration inspector decided that Edem-Effiong lacked good moral character, as that term is defined by law, because he had, in fact, given false or misleading information in order to obtain an immigration benefit. Specifically, Edem-Effiong omitted reference to his out-of-wedlock child on the Form I-751, thereby concealing his extra-marital relations with his first wife in order to circumvent scrutiny under the IMFA and to successfully obtain an immigration benefit, namely, the removal of his conditional resident status. In addition, Edem-Effiong testified falsely at the

citizenship interview when he denied that he had ever provided such false or misleading information.

Edem-Effiong filed an administrative appeal to the District Director and requested a hearing on the adverse decision, arguing that the omission of his fifth child on the Form I-751 was an innocent mistake because the wording on the form was ambiguous. Noting that the Form I-751 clearly asked the petitioner to list "all" of his children, and that the form was prepared for the petitioner by an experienced immigration attorney, the District Director found that Edem-Effiong's proffered excuse was not credible and denied the appeal. Edem-Effiong filed the pending "Complaint for Declaratory Judgment" ("*Complaint*") under 28 U.S.C. § 2201, seeking a "judicial determination of his naturalization application" in the form of a declaratory judgment "that he is entitled to be naturalized as a citizen of the United States." *Complaint*, at ¶ 8.

Edem-Effiong has filed motion for summary judgment, arguing that the District Director's decision to deny his appeal was wrong and that he is entitled to be naturalized. The District Director has filed a cross-motion for summary judgment in response, arguing that Edem-Effiong is not eligible for naturalization as a matter of law because he fails to meet the statutory requirement of good moral character. The parties' contentions are discussed below under the governing legal standards.

## II. STANDARD OF REVIEW

The parties' motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman*, 369 F.3d at 860 (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III. LEGAL ANALYSIS

#### A. Declaratory Judgment Actions in Federal Court

Edem-Effiong seeks declaratory relief from the administrative decision denying his application for naturalization. The Declaratory Judgment Act, codified as amended at 28 U.S.C. § 2201(a), provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." The declaratory judgment statutes are not an independent basis for subject matter jurisdiction in the district courts. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

In this instance, Edem-Effiong invokes 8 U.S.C. § 1421(c), which authorizes *de novo* judicial review of an application for naturalization that has been denied after a hearing under 8 U.S.C. § 1447(a).[3] *See Aparicio v. Blakeway*, 302 F.3d 437, 445-46 (5th Cir. 2002). Because the plaintiff has properly invoked federal subject matter jurisdiction, this Court

---

[3] In compliance with 8 U.S.C. § 1447(a), Edem-Effiong requested a hearing on the unfavorable decision that he received in response to his naturalization application. His request was denied. Accordingly, Edem-Effiong adequately exhausted his administrative remedies before filing suit in federal court.

enters the following findings and conclusions regarding his claim for citizenship through naturalization.

### B. Citizenship Through Naturalization

When an alien seeks to obtain the privileges and benefits of citizenship through naturalization, it is well settled that the burden is on the alien applicant to establish his eligibility in every respect. *See Berenyi v. District Director, INS*, 385 U.S. 630, 637 (1967). As such, the applicant must strictly comply with all congressionally imposed prerequisites to the acquisition of citizenship. *See INS v. Pangilinan*, 486 U.S. 875, 884 (1988); *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). Any doubts regarding eligibility for naturalization must be resolved in favor of the government and against the applicant. *See Berenyi*, 385 U.S. at 637; *see also United States v. Macintosh*, 283 U.S. 605, 626 (1931) ("The Naturalization Act is to be construed 'with definite purpose to favor and support the government,' and the United States is entitled to the benefit of any doubt which remains in the mind of the court as to any essential matter of fact.").

Under the applicable provisions of the Immigration and Nationality Act (the "INA") and the governing regulations, the general requirements for obtaining citizenship through naturalization specify that "[n]o person . . . shall be naturalized" unless the applicant meets the following criteria:

(1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . .;

>   (2)   has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and
>
>   (3)   during all the periods referred to in this subsection has been and still is a person of good moral character. . . .

8 U.S.C. § 1427(a); *see also* 8 C.F.R. § 316.2(7). Edem-Effiong argues that he is entitled to a judgment in his favor on the issue of his eligibility for citizenship because he meets all of the statutory requirements for naturalization. The District Director disagrees, arguing that Edem-Effiong cannot meet the good-moral-character requirement because he gave false testimony in order to obtain an immigration benefit. Accordingly, the dispositive issue is whether Edem-Effiong meets the statutory requirement of good moral character for citizenship.

**C.    Good Moral Character for Citizenship**

As noted, to become a citizen through naturalization, an applicant must show that he is "a person of good moral character." 8 U.S.C. § 1427(a)(3); *see also* 8 C.F.R. § 316.2(a)(7). The statutory period for which good moral character is required begins five years before the application for naturalization is filed, and continues until the applicant becomes a United States citizen. 8 U.S.C. § 1427(a)(3); *see also* 8 C.F.R. § 316.10(a)(1). Determinations of good moral character must be made "on a case-by-case basis taking into account the elements enumerated in [8 C.F.R. § 316.10] and the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). The burden is on the applicant to demonstrate that, during the statutorily prescribed period, he has been and continues to be a person of good moral character. *See* 8 C.F.R. § 316.10(a)(1).

The INA defines good moral character in the negative to exclude persons who exhibit certain traits, such as habitual drunkards, illegal gamblers, and criminals. *See* 8 U.S.C. § 1101(f). Also excluded from a finding of good moral character are persons who have "given false testimony for the purpose of obtaining any" immigration-related benefit. *See* 8 U.S.C. § 1101(f)(6). An applicant "shall be found to lack good moral character" if, during the statutory period, he has "given false testimony to obtain any benefit from [the INA], if the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit, . . . *regardless of whether the information provided was material*[.]" 8 C.F.R. § 316.10(b)(2)(vi) (emphasis added). The Supreme Court has interpreted this definition to mean "precisely what is says," which is, literally, that a person may be "of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Kungys v. United States*, 485 U.S. 759, 779-780 (1988). Thus, in contrast to denaturalization proceedings, there is no materiality requirement in connection with false statements in the context of a naturalization proceeding. *See id*.

In this case, Edem-Effiong was found to lack good moral character because he had given false testimony in order to obtain an immigration benefit. During Edem-Effiong's interview for citizenship, the inspector asked him if he had ever given false or misleading information while applying for an immigration benefit. Edem-Effiong testified that he had not, but the record showed that he had failed to disclose one of his children on the application to remove the conditions of residence (the Form I-751). The Form I-751 asked

Edem-Effiong to list "<u>all</u>" of his children. *Petition to Remove Conditions on Residence*, Administrative Record, at AEE-77 (emphasis in original). Edem-Effiong listed only the four children that he had during his prior marriage, but failed to disclose the fifth child that he had with his first wife during his marriage to his second wife.

The information given by Edem-Effiong on the Form I-751 was false because he did not list "all" of his children as the form requested. Moreover, by concealing that he had an out-of-wedlock child with his former spouse during the period of conditional residence, Edem-Effiong foreclosed an inquiry into the bona fides of his marriage to Debbie Parker and his petition to remove the conditions on his status was approved as a result. It was not unreasonable for immigration officials to conclude that Edem-Effiong intentionally failed to disclose that he had a fifth child out of wedlock as the result of an extra-marital "indiscretion" with his first wife because such information would have invited greater scrutiny into the legitimacy of Edem-Effiong's marriage to Debbie Parker, who sponsored his application for lawful permanent resident status. Accordingly, it appears that Edem-Effiong gave false or misleading information in order to obtain an immigration benefit.

Edem-Effiong concedes that he failed to disclose the child that he had as the result of an extra-marital affair with his first wife. Edem-Effiong raises two primary arguments in support of his request for a judgment in his favor. First, Edem-Effiong argues that the omission was not made with intent to deceive, but that it was mistakenly done as the result of an ambiguity in the Form I-751. Second, Edem-Effiong argues that the omission occurred more than three years before his naturalization application was filed and was therefore

outside the statutory period during which good moral character was required. Each argument is addressed in turn.

### E.     Ambiguity on the Form I-751

Edem-Effiong argues that the omission was not "inherently base, vile, or depraved" on the level of an offense of "moral turpitude," but that it was an innocent mistake due to an ambiguity in the Form I-751 that he filed in an effort to remove the conditions on his residence.[4] This argument is far fetched, at best. The heading for the portion of the Form I-751 at issue reads as follows: "**Part 5. Information About Your Children.** ***List all your children. Attach another sheet if necessary.***" *Petition to Remove Conditions on Residence*, Administrative Record, at AEE- 77 (emphasis in original). Under the heading are four blanks requesting the name and date of birth for each child. *See id*. The form also inquires whether the child is in the United States and, if so, for the child's "A#" or Alien

---

[4]     "Moral turpitude" is a term of art that is distinct from the good-moral-character requirement, which is governed by a specific statutory definition. *See* 8 U.S.C. § 1101(f). For example, a non-citizen convicted of a "crime of moral turpitude" and sentenced to imprisonment for one year or longer is subject to removal if the offense was committed within five years of admission. *See* 8 U.S.C. § 1227(a)(2)(A)(i). Crimes of moral turpitude, while not defined in the INA, generally require immoral or corrupt intent as an element of the offense. *See Hamdan v. INS*, 98 F.3d 183, 186 (5th Cir. 1996) ("Moral turpitude refers generally to conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.") (internal citations omitted). Edem-Effiong's naturalization application was not denied because he committed a crime of moral turpitude. It was denied because he failed to satisfy a specific statutory criteria requiring him to show that he was a person of good moral character under 8 U.S.C. § 1101(f). Therefore, Edem-Effiong's argument (that his naturalization application should not have been denied because his conduct did not amount to an inherently base offense of moral turpitude) is misplaced.

identification number, as well as his or her "current immigration status, and U.S. address." *See id*. The form also asks whether the child lives with the applicant. *See id*.

"Ambiguity" is defined as "uncertainty of meaning or intention, as in a contractual term or statutory provision." BLACK'S LAW DICTIONARY 88 (8th ed. 2004). In the context of contract interpretation, for example, a term is "ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (citations omitted). A plain reading of the Form I-751 at issue suggests no alternative to the request to list "all" of the applicant's children.[5] Indeed, the word "all" is underlined in the Form I-751 for emphasis. The disputed portion of the Form I-751 is straight-forward, clear, and unambiguous. The Court rejects Edem-Effiong's argument that he did not understand the question to require him to list "all" of his children. As the District Director notes, the form was completed on Edem-Effiong's behalf by an experienced immigration attorney, who undoubtedly understood the effect that listing an out-of-wedlock child would have on an inquiry into the validity of an alien's qualifying marriage. Thus, his convenient failure to provide a complete answer to the question is not excused by any ambiguity in the form.

---

5 The word "all" means "the whole amount or quantity of" or "every member or individual component." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 45 (Deluxe Ed. 1998).

**F.     Applicable Statutory Period**

Edem-Effiong contends further that his false statement cannot be used to preclude a finding of good moral character because the omission made on the Form I-751 occurred on June 4, 1998, when he filed the joint petition to remove his conditional status. Edem-Effiong argues that, as an alien spouse of a United States citizen, the statutory period during which he was required to demonstrate good moral character extended for only three years prior to the date that he applied for naturalization on November 4, 2002. Edem-Effiong maintains, therefore, that the USCIS erred by "reaching out" to the 1998 Form I-751, and the false information contained therein, as evidence that he lacked good moral character.[6]

Edem-Effiong's argument is without merit. It is true that, under 8 U.S.C. § 1430, persons applying for naturalization who have been living in "marital union" with a United States citizen are eligible for naturalization under 8 U.S.C. § 1427(a) after he or she has resided in the United States for only three years, rather than the five-year period required by § 1427(a). The District Director correctly notes that this shortened statutory period does not pertain to Edem-Effiong because he was not living in "marital union" with his second wife when he applied for naturalization on November 4, 2002. He had already filed for a divorce from Debbie Parker on October 11, 2002, and his petition reflects that the two were no longer living together as husband and wife at that time. *Original Petition for Divorce*,

---

[6]   Edem-Effiong did not raise this argument during his administrative appeal. Therefore, the argument is unexhausted and not properly before the Court. Alternatively, however, the argument is without merit for reasons discussed above.

Administrative Record, at AEE-23. More importantly, Congress has provided that determinations of good moral character are not restricted to the period found in the naturalization statute, 8 U.S.C. § 1427(a), "but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e). Accordingly, immigration officials did not err by considering Edem-Effiong's conduct in 1998, and the false statements that he made on the Form I-751, as evidence that he lacked good moral character.

## VI. CONCLUSION AND ORDER

Based on the foregoing, Edem-Effiong has failed to show that he is entitled to citizenship through naturalization or that USCIS wrongly denied his naturalization application. Therefore, the Court **ORDERS** as follows:

1. The plaintiff's motion for summary judgment [Doc. # 13] is **DENIED**, and the defendant's cross-motion for summary judgment [Doc. # 18] is **GRANTED**.

2. This case is **DISMISSED with prejudice**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas on the **13th** day of **March, 2006**.

Nancy F. Atlas
United States District Judge